LOCKWOOD <em>against</em> JESUP and others :

IN ERROR.

Though to constitute an *heir*, in the fullest sense of that term, the death of the ancestor is essential; yet it may be used in a contract to denote the presumptive heir of a person living; and when such is the intention of the parties, it may be shewn by averment.

Therefore, where the plaintiffs in an action on a promissory note, payable to the heirs of *J. S.*, averred, that at the date of the note, they were the children and only presumptive heirs of *J. S.*, then living ; and that the defendant, in and by said note, promised the plaintiffs, by the appellation of the heirs of *J. S.*, to pay, &c. it was held, on demurrer, that such action was sustainable.

THIS was an action brought by the defendants in error against the plaintiff in error, on a promissory note in the following terms :

" <em>Greenwich, May</em> 1st, 1822.

On demand, for value received, I promise to pay unto the heirs of *Jonathan Jesup* one hundred dollars, with interest till paid ; as witness my hand.

<em>Peter Lockwood.</em>"

The declaration averred, That on the 1st of *May*, 1822, the plaintiffs were the children and presumptive heirs, and only presumptive heirs, of *Jonathan Jesup*, then of said *Greenwich*, now deceased, and were by the defendant known to be such ; and that the defendant, in and by said note, promised the plaintiffs, by the appellation of heirs of *Jonathan Jesup*, and describing them as such, to pay, &c.

To this declaration the defendant demurred ; and the superior court adjudged it sufficient. To revise this decision, the defendant brought the case here, by motion in error.

*S. H. Minor* and *Betts,* for the plaintiff in error, contended, That the note was void for uncertainty; as a person living can have no heirs. The word *heirs* has a precise meaning, which is invariably attached to it; and to depart from that meaning, is to depart from the contract; to make it what the parties have not made it. According to the legal import of the terms used, the note is not payable to these plaintiffs; and consequently, they cannot sue upon it. 1 *Swift's Dig.* 157. 2 *Bla. Comm.* 204. 211. *Bac. Abr. tit.* Grant. C. *Com. Dig. tit.* Grantor. A. 1. 2. B. 1. *Shep. Touch.* 234, 5.

*Hawley,* for the defendants in error, insisted, 1. That the promisees were sufficiently described, by the terms of the note. The word *heirs* has several significations known to the law; and the plaintiffs were heirs, in one sense, when the note was given. *Cruise's Dig. tit.* Descent, c. 10. s. 23. *Bac. Abr. tit.* Heir. B. *Bacon* v. *Fitch,* 1 *Root* 181. We are to look at the *intent,* rather than the grammatical or technical sense. When a word is capable of two or more significations, it shall be understood in that which will have some operation, rather than in that which will have none. 2 *Com. on Contr.* 520. [533.] *Pow. on Contr.* 377. 382. 1 *Swift's Dig.* 222, 3. 225.

2. That if the word *heirs* was, of itself, inapplicable to the plaintiffs, it might be explained and applied, by averment. 1 *Swift's Dig.* 608. *The Medway Cotton Manufactory* v. *Adams & al.* 10 *Mass. Rep.* 360. *The New-York African Society* v. *Varick & al.* 13 *Johns. Rep.* 38. *Willis* v. *Barrett,* 2 *Stark. Ca.* 29. 3 *Stark. Ev.* 1021. 1055. It is so in the construction of wills. *Pow. Dev.* 407,8. 3 *Stark. Ev.* 1025.

The promise is to take effect *immediately,*—is liable to be enforced *immediately,*—is to draw interest *immediately;* and the maker intended to make the promise to persons *at the time* capable of being parties to the contract and calling for its enforcement.

BISSELL, J. The only question raised upon this motion in error, regards the validity of a note of hand. The note is made payable to the *heirs* of *Jonathan Jesup,* who is admitted upon the record, to have been living, when the note bears date. It is averred in the declaration, that the plaintiffs below were the children and presumptive heirs, and the only presumptive heirs, of the said *Jonathan Jesup;* and that the prom-

*Fairfield,*
*June, 1832.*

Lockwood
*v.*
Jesup.

ise contained in the note, was made to them by that title and appellation.

These averments, if well made, are admitted by the demurrer. But it is said, that this contract is, on the face of it, so utterly void, as that it cannot be aided by any averments whatever; that there are no promisees to this note; no persons in existence to whom it is made payable.

This is, obviously, the only ground upon which the case of the plaintiff in error can be rested, with the least hope of success. Because, if the note be made payable to *any person*, although there may be an ambiguity with regard to the person intended, there is no doubt, that such a defect may be supplied by averment: And parol evidence is always admissible to explain a latent ambiguity. This rule obtains universally in the construction of wills. Even a misdescription may be corrected by averment; and a plaintiff, suing on a promissory note, which purports to be payable to a person of a different name, may aver, and show, by evidence, that he was the person intended. *Willis* v. *Barrett,* 2 *Stark. Rep.* 29. 3 *Stark. Ev.* 1021. 1025. *The Medway Manufacturing Company* v. *Adams* &. al. 10 *Mass. Rep.* 360.

Is, then, the note in question void, on the ground that it mentions no promisees, and of course contains no promise? The affirmative of this proposition rests on the legal maxim, "*quod memo est hæres viventis.*" The accuracy of this maxim, as a general proposition, is unquestionable: And it is undoubtedly true, that to constitute a person a full and complete heir, the death of the ancestor is essential. But it is also true, that the term "heir" is not always used, in the law, as denoting a person, whose ancestor is dead. There are many cases, where it applies, though the ancestor be living; and there it means the *heir apparent.* In this sense, it is frequently used in statutes, and in legal documents. Thus is it used in the *Stat.* 25 *Edw.* III. by which it is made treason to kill the *heir of the king.* In the same sense is it used in writs of ravishment of ward—" *Quare filium et hæredem rapuit.*" And there are numerous instances under wills, where the word *heir* has been used in the same sense. Thus, a devise to the heir of a person living has been repeatedly adjudged good, when it was manifestly the intent of the testator to designate the heir apparent. *Burchett* v. *Durdant,* 2 *Vent.* 311. *Darbison* d. *Long* v. *Beaumont,* 1 *P. Wms.* 229. S. C. *in Dom.*

*Proc.* 3 *Bro. Parl. Ca.* 60. [*Toml.* ed.] *Goodright d. Brooking* v. *White,* 2 *Bla. Rep.* 1010. *Cruger* & al. v. *Heyward* & al. 2 *Desaus. Ch. Rep.* 94. *Crane* & al. v. *Rock,* 7 *Bing.* 226. The word *heir,* does not, then, necessarily and *ex vi termini,* import the death of the ancestor.

It may be, and as we have seen, often is, used to denote the heir apparent, or presumptive heir of a person living. And in this sense it was, undoubtedly, used in the case now before us.

There can, indeed, be no question, in regard to the intention of the parties to this contract. The note is on demand, bears interest from the date, and is capable of being enforced immediately. It was not to await the death of the ancestor, but to take immediate effect. The promise was made to persons in existence ; to persons capable of receiving and enforcing the contract. They are also sufficiently designated ; and we have only to apply a very familiar and well settled principle, and that is, that in the construction of contracts, the intent of the parties is to govern. I will only add, that the precise point here raised, was settled in the case of *Bacon* v. *Fitch,* 1 *Root,* 181.

The judgment of the superior court must be affirmed.

The other Judges were of the same opinion.

Judgment affirmed.